UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>(5) DAVID JOHN MOULDER,<br><br>Defendant. | Case No. 20-cr-232 (JRT/DTS)<br><br>MOTION FOR A PRELIMIARY ORDER OF FORFEITURE |

The United States of America, through Andrew M. Luger, United States Attorney for the District of Minnesota, and Craig R. Baune, Assistant United States Attorney, respectfully moves this Court for an Order imposing a Preliminary Order of Forfeiture against Defendant David John Moulder pursuant to 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(8), and Fed. R. Crim. P. 32.2, and for an order authorizing civil discovery pursuant to Fed. R. Crim. P. 32.2(b)(3).

## BACKGROUND

On October 20, 2020, a Grand Jury in the District of Minnesota returned an Indictment against Defendant. ECF No. 15. The Forfeiture Allegations of the Indictment provided notice that the United States sought forfeiture of, among other things, any property, real or personal, which constitutes or is derived from proceeds traceable to the conspiracy to commit mail fraud charged in Count 1 of the Indictment, pursuant to 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), and any real or personal property used or intended to be used to commit, to facilitate, or to promote the commission of the conspiracy to commit mail fraud, pursuant to 18 U.S.C. § 982(a)(8).

On December 27, 2022, the United States and the Defendant entered into a Plea Agreement through which he agreed to plead guilty to Count 1 of the Indictment, which charged him with Conspiracy to Commit Mail Fraud in violation of 18 U.S.C. §§ 1341, 1349, and 2326 in connection with a telemarketing fraud scheme. Plea Agreement, ECF No. 1404, at ¶ 1. Moulder admitted that from about 2000 through in or about 2020, he engaged in a telemarketing fraud scheme involving magazine subscription sales. *Id*. at ¶ 2. Moulder participated in the telemarketing fraud scheme in multiple ways, including as the owner and Chief Executive Officer of PS Online. PS Online was a Minnesota-based company that provided customer relationship management software used by companies involved in fraudulent magazine sales to perpetuate the fraud scheme. Beginning in or around 2010, fraudulent magazine subscription companies around the country used PS Online to track the victim-consumers they tricked and deceived into purchasing magazine subscriptions they did not want or understand they were going to be charged for. Moulder knew that fraudulent magazine companies used PS Online as a tool to perpetuate the fraud and marketed PS Online to those companies knowing that they intended to use PS Online to perpetuate the fraud scheme.

Moulder also ran additional companies involved in the magazine industry, including Viking Magazine, Total Customer Service, and Direct Clearing, which provided an array of services to companies involved in fraudulent magazine sales. Total Customer Service handled collections on behalf of companies involved in fraudulent magazine sales. In the course of the scheme, Moulder and his companies collected approximately $1,311,532 from magazine companies involved in the fraudulent scheme. *Id.*

Moulder agreed to forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the mail fraud scheme charged in Count 1. *Id.* ¶ 14. Moulder consented to entry of a money judgment forfeiture in the amount of at least $1,311,532, and agreed that the amount of proceeds he obtained, directly or indirectly, as a result of the mail fraud scheme equals or exceeds this amount. *Id.* The United States reserved its right to forfeit substitute assets and directly forfeitable property.

## ARGUMENT

**I.  A MONEY JUDGMENT FORFEITURE OF $1,311,532 SHOULD BE ENTERED.**

**A. Personal Money Judgments Forfeitures are Authorized in Criminal Actions.**

Entry of a personal money judgment forfeiture is specifically authorized by Fed. R. Civ. P. 32.2(b)(1), and such orders have been repeatedly upheld. *See, e.g., United States v. Johnson*, 956 F.3d 510, 518 n.5 (8th Cir. 2020) (affirming $2.1 million money judgment forfeiture); *United States v. Peithman*, 917 F.3d 635, 652 (8th Cir. 2019) (affirming money judgment forfeiture imposed under 18 U.S.C. § 981(a)(1)(C), while remanding for a redetermination of the amount of the money judgment issued under 21 U.S.C. § 853), cert. denied, 140 S. Ct. 340 (2019); *United States v. Gregoire,* 638 F.3d 962, 971-72 (8th Cir. 2011) (money judgment forfeiture permitted based on mail fraud conviction; no jury determination required for amount of money judgment forfeiture); *United States v. Jennings*, 487 F.3d 564, 586 (8th Cir. 2007) (affirming money judgment for amount of proceeds defendant derived from "honest services" mail fraud scheme).

The Defendant has pleaded guilty to Mail Fraud in violation of 18 U.S.C. § 1341.

As a consequence, the United States is entitled to a money judgment forfeiture against him pursuant to 18 U.S.C. § 981(a)(1)(C), which mandates forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense."[1]

Proceeds of the Defendant's mail fraud scheme include all gross receipts of the scheme. *See, e.g., United States v. Simmons,* 154 F.3d 765, 770-772 (8th Cir. 1998) (interpreting similar forfeiture authority for RICO violation, holding, "the better view is the one that defines proceeds as the gross receipts of the illegal activities); *United States v. Huber*, 404 F.3d 1047, 1058 (8th Cir. 2005) (defendant was not entitled to offset expenses, "even if the expenses were legitimately incurred by Huber, they would not reduce the amount subject to forfeiture"); *United States v. Hively.* 437 F.3d 752, 763 (8th Cir. 2006) (same); *United States v. Lo*, 839 F.3d 777, 792-94 (9th Cir. 2016) (all funds from defendant's fraud scheme were subject to forfeiture on conviction for mail and wire fraud, rather than only the amounts specified in counts of conviction).

---

[1] Pursuant to 18 U.S.C. § 1956(c)(7)(A), the term "specified unlawful activity" includes any act or activity constituting an offense listed in section 1961(1). The offenses listed in section 1961(1) include mail fraud. Although 18 U.S.C. § 981(a)(1)(C) is a civil forfeiture provision, 28 U.S.C. 2461(c) authorizes the government to seek criminal forfeiture when a defendant is convicted of an offense for which civil forfeiture is authorized, as it has done here. ECF No. 15, Forfeiture Allegations. *See, e.g., United States v. Jennings*, 487 F.3d 564, 583-584 (8th Cir. 2007) (affirming money judgment forfeiture based on mail fraud conviction pursuant to 18 U.S.C. 981(a)(1)(C) and 28 U.S.C. § 2461(c)); *United States v. Adetiloye*, 716 F.3d 1030, 1041 (8th Cir. 2013).

### B. The United States is Entitled to a $1,311,532 Money Judgment Forfeiture Pursuant to 18 U.S.C. § 981(a)(1)(C).

The Defendant has admitted through his plea agreement that from 2000 through in or about 2020 he engaged in a telemarketing fraud scheme involving magazine subscription sales. The Defendant admitted that the amount of proceeds he obtained, directly or indirectly, as a result of the mail fraud scheme equals or exceeds $1,311,532. Because the proceeds of the Defendant's fraud scheme amount to more than $1,311,532, a money judgment forfeiture in that amount is appropriate.

## II.   A GENERAL ORDER OF FORFEITURE SHOULD BE ENTERED.

The United States requests that a general order of forfeiture be entered against the Defendant pursuant to Fed. R. Crim. P. 32.2(b)(2)(C). A general order of forfeiture, which is expressly authorized by the Federal Rules of Criminal Procedure, allows the government to seek the forfeiture of directly forfeitable property identified after the date of sentencing:

> (C) General Order. If, before sentencing, the court cannot identify all the specific property subject to forfeiture or calculate the amount of the money judgment, the court may enter a forfeiture order that:
>
> (i)   lists any identified property;
>
> (ii)  describes other property in general terms;
>
> (iii) states that the order will be amended under Rule 32.2(e)(1) when additional specific property is identified or the amount of the money judgment has been calculated.

Fed. R. Crim. P. 32.2(b)(2)(C).

The government requests that the preliminary order of forfeiture include a general order of forfeiture as provided for in Fed. R. Crim. P. 32.2(b)(2)(C). Entry of a general

order of forfeiture will allow the government to pursue directly forfeitable assets if any are identified after sentencing. As set forth below, the government is seeking authorization to conduct discovery, and paragraph 13 of the Plea Agreement requires disclosure of assets by the Defendant. If these or other actions reveal the existence of directly forfeitable property, the government would be able to forfeit is directly rather than as a substitute asset.

Preserving the government's right to seek the direct forfeiture of assets based on evidence that such assets are traceable to the Defendant's fraud scheme would allow the government to clear title to such assets and seek to recover proceeds that have been transferred to third parties. *See* 21 U.S.C. § 853(c) (codifying the relation-back doctrine). A general order of forfeiture will, therefore, provide an important tool in addition to the money judgment forfeiture requested above.[2]

### III. THE GOVERNMENT IS ENTITLED TO DISCOVERY TO LOCATE ASSETS SUBJECT TO FORFEITURE.

The United States also requests entry of an order pursuant to Fed. R. Crim. P. 32.2(b)(3) authorizing it to conduct discovery for the purpose of identifying and locating additional assets subject to forfeiture constituting, or derived from proceeds the Defendant obtained directly or indirectly from the wire fraud scheme, or assets of the Defendant that may be substituted up to the value of the money judgment forfeiture. Rule 32.2(b)(3) authorizes the government, upon the entry of a preliminary order of forfeiture, to "conduct any discovery the court considers proper in identifying, locating, or disposing of the

---

[2] The Defendant would receive a credit against the money judgment forfeiture for all assets that are forfeited from him regardless of whether they are forfeited directly or as substitute assets pursuant to 21 U.S.C. § 853(p).

property" that has been forfeited to the United States. Such discovery may include the taking of depositions of witnesses. *See* 21 U.S.C. § 853(m); *United States v. Saccoccia*, 898 F. Supp. 53 (D.R.I. 1995) (government can take depositions for the purpose of locating assets controlled by the defendant that are subject to forfeiture). In addition, the reference in Rule 32.2(b)(3) to "any discovery the court considers proper" necessarily permits the court to authorize discovery under the Federal Rules of Civil Procedure. Such discovery includes but is not limited to the authority to issue a request for documents to a party under Rule 34 and to a non-party under Rules 34(c) and 45.

The United States also requests that the Court retain jurisdiction over this action pursuant to Rule 32.2(e) to forfeit any subsequently discovered directly forfeitable or substitute property, and to dispose of any third-party claims to such assets.

## CONCLUSION

For the foregoing reasons, the United States respectfully moves this Court for a Preliminary Order of Forfeiture.

Respectfully submitted,

Dated: 2/16/2024

ANDREW M. LUGER
United States Attorney

 s/Craig Baune
BY: CRAIG R. BAUNE
Assistant U.S. Attorney
Attorney ID No. 331727
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Phone: 612-664-5600
Craig.baune@usdoj.gov