UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 20-232(5) (JRT/DTS)

UNITED STATES OF AMERICA,

      Plaintiff,

v.

DAVID JOHN MOULDER,

      Defendant.

**GOVERNMENT'S SENTENCING MEMORANDUM**

For the following reasons, the United States recommends that Defendant David Moulder receive a sentence of a year and a day imprisonment. The United States believes that such a sentence, which is a downward variance below the low end of the applicable Guidelines range, is sufficient, but not greater than necessary, to comport with the Section 3553(a)(2) sentencing factors.

I.    **Relevant Facts**

A. **Offense Conduct**

On October 20, 2020, Moulder was charged in a 53-count indictment with conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1349. Moulder entered a guilty plea pursuant to a plea agreement on December 27, 2022. The circumstances of the offense are set forth in the Presentence Investigation Report (the "PSR," ECF No. 1499).

For over two decades, Moulder participated in a large, nationwide telemarketing fraud scheme involving magazine subscription sales. The fraud scheme involved co-conspirators defrauding victims across the country, many of

whom were older or otherwise susceptible to fraud. The co-conspirators fraudulently induced consumers into making payments related to purported magazine subscriptions. Telemarketers working for the fraudulent companies called lists of consumers and made a series of lies and misrepresentations, including that the telemarketer was calling from the consumer's existing magazine company and was calling in order to reduce the monthly payments for an existing magazine subscription. But in reality, the company had no existing relationship with the consumer and tricked the consumer into paying for an expensive, new magazine subscription that they did not want or understand they were ordering.

Between 2000 through 2020, Moulder started and ran a company, PS Online, that was involved in the fraudulent magazine industry. PS Online was a Minnesota-based company that provided customer relationship management ("CRM") software used by companies involved in fraudulent magazine sales. Those companies that conducted fraudulent telemarketing calls used PS Online to perpetuate the fraud scheme, by tracking the victims they tricked and deceived into purchasing magazine subscriptions that they did not want or understand they were going to be charged for. Moulder knew that the fraudulent magazine companies used PS Online as a tool to perpetuate the fraud and marketed PS Online to those companies knowing that they intended to use PS Online to perpetuate the fraud scheme.

Moulder also ran additional companies involved in the magazine industry that provided an array of services to companies involved in fraudulent magazine sales, although they also had some legitimate operations. For example, Total Customer

Service handled collections on behalf of some companies involved in the fraudulent magazine sales.

In the course of the scheme, Moulder and his companies collected over $1.3 million from magazine companies involved in the fraudulent scheme.

### B. Defendant's Criminal History

Moulder has a limited criminal history, consisting of a driving under the influence conviction two more than twenty years ago and a gross misdemeanor conviction for fail to remit sales tax from over twenty years ago. Based on this, Moulder has a criminal history score of 2, and falls into criminal history category II.

### C. Defendant's Personal History

In many respects, Moulder had a good and stable upbringing. His parents were generally supportive and encouraging of him. However, his upbringing was not without its dysfunction. His father drank regularly, often to the detriment of his children. His parents ultimately divorced, and Moulder went back and forth between living with his father and his mother. When he reached his senior year of high school, he left the home and lived with his sibling or friends until graduation.

Moulder attended college at various points, and ultimately received a degree from St. Thomas. Moulder is married and has two children and is an active part of their lives. By all accounts, he is an involved and much-loved parent and husband.

## II. Argument

### A. Legal Background

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). "[U]nder the advisory guidelines scheme, sentencing judges are required to find sentence-enhancing facts only by a preponderance of the evidence." *United States v. Scott*, 448 F.3d 1040, 1043 (8th Cir. 2006).

"[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall*, 552 U.S. at 49-50; 18 U.S.C. § 3553(a). The Section 3553(a) factors include "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

### B. The Appropriate Sentence

A careful consideration of the Section 3553(a) factors warrants a sentence of a year and a day imprisonment.

#### 1. The Nature and Circumstances of the Offense.

Moulder's conduct was unquestionably serious and warrants a correspondingly serious sentence. He participated in a large, nationwide fraud scheme that targeted thousands of elderly and otherwise vulnerable victims. This Court has seen firsthand the effect of this scheme on the victims. Fixed income, elderly victims who were

4

swindled out of tens of thousands of dollars of much needed retirement funds. Confused victims with dementia who were repeatedly preyed out because of their diminished capacity by companies involved in the conspiracy. Victims who were desperate to make the fraud stop. And although Moulder knew well that was committing fraud and perpetuating the scheme, he continued to continued to do so.

At the same time, Moulder's involvement in the fraud was a step removed from the magazine telemarketing companies calling and defrauding victims day in and day out. Moulder ran a customer relationship management software program that was used by the companies to commit the fraud. While he knew that his involvement was wrong and perpetuated the harm to victims, he was not on the phone defrauding victims or running a company that did so. Though he was certainly a participant in the fraud scheme, his involvement was different in kind that any of the other defendants in this case.

Moulder did reap the benefits of this fraud scheme, however. Moulder got rich from this fraud, and as a result, had many trappings of wealth—nice house, fancy car, golf club memberships—paid for, at least in part, with fraud proceeds.

2.    <u>The History and Characteristics of the Defendant.</u>

In some respects, Moulder had a normal upbringing with plenty of potential, which makes it more difficult to understand how he ended up here. This is compounded by the fact that Moulder ran some companies that were successful without crossing the line into fraudulent conduct. By all accounts, Moulder could have been successful—indeed was successful—without committing fraud. Rather than

follow that potential, Moulder took the easy way out and went into a decades long path of committing fraud.

    3.    <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Afford Adequate Deterrence</u>

In light of the seriousness and wide-spread nature of the offense, Moulder requires a sentence that will not only prevent him from committing another offense in the future but will also provide general deterrence for others who operated similar fraudulent schemes brazenly throughout the country for decades. Moulder and others who participate or consider participating in a similar scheme are more likely to be deterred from committing fraud if they learn there are serious consequences, and they will pay a stiff price for it. A significant sentence will promote respect for the law and reflect the damage to victims and the community as a whole as a result of a large-scale fraud scheme that preyed on elderly and otherwise vulnerable victims.

At the same time, Moulder has been subject to plenty of collateral consequences over the four years this case has been pending, and Moulder has been exemplary in his supervised release. In addition, Moulder has satisfied his significant restitution obligation in an attempt to alleviate the consequences to victims. He has also demonstrated his true remorse for his own conduct and his desire to put his bad actions and the consequences of those actions behind him.

A sentence of a year and a day imprisonment will serve the needs of sentencing to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, and to protect the public from further similar fraud schemes.

### III. Conclusion

For all the above reasons, the United States respectfully requests that the Court vary downward and impose a sentence of a year and a day imprisonment.

Respectfully submitted,

Dated: December 3, 2024

ANDREW M. LUGER
United States Attorney

/s/ *Harry M. Jacobs*

BY:  HARRY M. JACOBS
JOSEPH H. THOMPSON
MATTHEW S. EBERT
MELINDA A. WILLIAMS
GARRETT S. FIELDS
Assistant U.S. Attorneys